**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MICHAEL JABRO,

    Plaintiff,                                                                  Case No. 08-11893

v.                                                                                          Hon.: Lawrence P. Zatkoff

DANIELE CERRONI,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on June 11, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant Daniele Cerroni's ("Defendant")[1] Motion for Summary Judgment (Docket #22). Plaintiff has filed a response, and Defendant filed a reply brief. In response, Plaintiff also filed a Motion for Leave to File First Amended Complaint (Docket #23), to which Defendant responded. The Court finds that the facts and legal arguments pertinent to the motions are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED, and

---

[1]The City of Allen Park and Ann Cronin, initially named as defendants in this action, previously were dismissed by order of the Court pursuant to a stipulation filed with the Court.

Plaintiff's Motion for Leave to File First Amended Complaint is DENIED.

## II.  BACKGROUND

The only remaining claim against Defendant in this Court is for excessive force under 42 U.S.C. § 1983. Plaintiff's claim arises out of an incident that occurred on November 10, 2007. That evening, Plaintiff was in the hallway of his apartment building when he saw his neighbor, Rosemary Johnson, pass by him. Plaintiff had a fish tank he was trying to sell, and he asked Ms. Johnson if she knew anyone who would be interested in buying it. Ms. Johnson told Plaintiff that if he gave her his telephone number, she would post a flier at the gas station where she worked. Ms. Johnson then entered her apartment. Shortly thereafter, Plaintiff knocked on her door and gave Ms. Johnson a piece of paper with his phone number on it, so that she could post the ad. At this time, Ms. Johnson and Plaintiff had a conversation about Ms. Johnson's hermit crabs, and Ms. Johnson asked Plaintiff if he would like to see them. Plaintiff said yes and entered the apartment as Ms. Johnson retrieved a crab from its tank. Ms. Johnson showed Plaintiff the hermit crab. Although the balance of their conversation and the events that occurred while Plaintiff was in her apartment are in dispute, it is undisputed that Plaintiff left Ms. Johnson's apartment shortly thereafter.

Later that evening, Ms. Johnson went out for dinner with her friend. While they were out, Plaintiff placed handwritten, sexually suggestive notes in Ms. Johnson's door. When Ms. Johnson returned and found the notes, she called the police. Defendant and Ann Cronin, both Allen Park police officers, arrived at the apartment building at approximately 11:00 p.m. Initially, they spoke with Ms. Johnson about the notes. After speaking with Ms. Johnson, the officers went to Plaintiff's apartment, which was adjacent to Ms. Johnson's. Upon answering the door, the officers asked

Plaintiff for his identification. Plaintiff produced his driver's license for them. The officers then turned to return to Ms. Johnson's apartment. As the officers were leaving his apartment, Plaintiff asked the officers for his driver's license back. At that point, Defendant and/or Officer Cronin ordered Plaintiff back into his apartment without returning the driver's license. A few minutes later, the officers returned to Plaintiff's apartment. Defendant and Plaintiff then exchanged insults with each other before Defendant asked Plaintiff if he wanted his driver's license back. Plaintiff responded that he did. Rather than simply handing the driver's license back to Plaintiff, Defendant threw it onto the ground behind Plaintiff.

As to what happened next, numerous versions have been reported. First, Defendant and Officer Cronin maintain (both in the police report regarding the incident and at their respective depositions) that Plaintiff was coming toward Defendant in an agitated or aggravated manner, with clenched fists. For that reason, Defendant executed a defensive maneuver by putting up his left hand to stop Plaintiff from coming any closer. This maneuver, which has been described as a "palm-heel" strike to Plaintiff's chest, resulted in Plaintiff falling down backward. In his Complaint, Plaintiff likewise alleged that Defendant executed a "palm-heel" strike that caused him to fall backward and injure his wrist when he tried to break his fall with his left hand.

The second version of what occurred was related by Plaintiff to a doctor he saw shortly after the incident. Plaintiff told the doctor that his wrist pain was the result of the police twisting and breaking his wrist. At his deposition, Plaintiff acknowledged that he told the doctor that it was from the Defendant twisting his wrist or shoving him and ramming him such that his wrist was injured, but Plaintiff also stated that it happened so quickly, he does not remember exactly what happened. The third version of what occurred was related by Plaintiff in his answers to Defendant's

3

interrogatories and at his deposition. In those instances, Plaintiff indicated that his wrist injury was the result of being shoved from behind by Defendant. Regardless of what happened, the uncontroverted eyewitness accounts of that evening indicate that Plaintiff had been drinking. According to Defendant and Officer Cronin, Plaintiff was intoxicated. Ms. Johnson testified that Plaintiff was "extremely drunk" that evening. Plaintiff himself acknowledges that he had consumed four beers before Defendant and Officer Cronin knocked on his door.

Subsequent to whatever events occurred at that time, Defendant and/or Officer Cronin were about to arrest Plaintiff when they recognized that Plaintiff may have suffered a broken wrist. Therefore, rather than arrest him, they called for an ambulance. Plaintiff was taken by ambulance to Oakwood Hospital, where he was diagnosed with a left wrist fracture. He visited a doctor on November 12, 2007, underwent surgery on the wrist on November 19, 2007, and had a second surgery on the left wrist in May 2008. As a result of the incident, Defendant was charged with and pled guilty to a charge of disturbing the peace.

### III. STANDARD OF REVIEW

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most

favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

### IV.  ANALYSIS

**A.     Motion for Summary Judgment**

In his Complaint, Plaintiff alleged that

> Defendant [] then, without warning, executed a "palm-heel" strike to the Plaintiff's chest in a violent and forcible manner causing the Plaintiff to fall backwards onto the floor with all of his weight, landing on his left wrist, causing it to fracture.

Plaintiff's Complaint contained no other allegations of force, excessive or otherwise, exercised by Defendant. In his Motion for Summary Judgment, Defendant "admitted" that he executed a "palm-heel" strike to Plaintiff's chest, but he asserts that Plaintiff's excessive force claim should be dismissed because Defendant is entitled to qualified immunity under the facts and circumstances of

the case.

In his response brief, however, Plaintiff denies that there was ever a "palm-heel" strike and relies instead on the version asserted in his answers to Defendant's interrogatories and in the testimony given at his deposition. In other words, Plaintiff now insists that his wrist injury was not the result of a "palm-heel" strike by Defendant. Thus, Plaintiff admits that the facts of this case do not support the excessive force allegations set forth in his Complaint. The Court therefore concludes that Defendant is entitled to summary judgment on Plaintiff's Complaint.[2]

**B.      Motion for Leave to File First Amended Complaint**

Plaintiff would like to amend his Complaint to re-plead his excessive force claim in a manner such that the facts will conform to the proofs (*i.e.*, plead that the excessive force exercised by Defendant was the alleged shove from behind). In a case where a responsive pleading has been filed, however, a party may amend its pleading only with the written consent of the opposing party or by leave of the Court. FED. R. CIV. P. 15(a)(2). Defendant does not concur in Plaintiff's request; therefore, it is within the Court's discretion whether to grant Plaintiff's motion for leave to file an amended complaint. Pursuant to Rule 15(a)(2), "leave shall be freely given when justice so requires." A district court may deny a plaintiff leave to amend his or her complaint when the proposed amendment would be futile. *See, e.g., Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

---

[2]The Court also finds that Defendant is entitled to qualified immunity based on the allegations set forth in the Complaint. Based on the facts and circumstances of this case, Defendant was not "on notice that his conduct would be clearly unlawful[.]" *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Accordingly, the Court also would grant Defendant's Motion for Summary Judgment on the basis of qualified immunity.

Plaintiff contends that the original Complaint misstated the facts because the statement about the "palm-heel" strike by Defendant was taken from the police report for the incident rather than reflecting Plaintiff's version of what happened (*i.e.*, that Defendant shoved Plaintiff in the back). Thus, Plaintiff maintains that the amended Complaint is necessary and appropriate because it conforms directly to the sworn testimony of Plaintiff in this case. Defendant agrees that amendments may be freely given to conform the allegations to the proofs, but Defendant believes such a request should be timely made (which did not happen in this case). Defendant asserts that (1) he would be prejudiced if Plaintiff's motion granted because all relevant discovery and dispositive motion cut–off dates have passed, and (2) the proposed amendment would be futile.

Plaintiff offers no explanation for why the Motion for Leave to File Amended Complaint was filed so late. Such untimeliness is more significant in light of the fact that on November 25, 2008, just five days after the deposition of Plaintiff was taken, Defendant's counsel asked whether Plaintiff was going to amend the Complaint to reflect the testimony given at the deposition. Despite that inquiry, Plaintiff chose not to amend the Complaint at that time. Instead, Plaintiff inexplicably waited to file the motion for leave to amend the Complaint until four months later, after the discovery period closed and Defendant filed his Motion for Summary Judgment.

The Court finds that Plaintiff also has not demonstrated how the interests of justice require granting his motion. Although Plaintiff states, "Defendant would [] not suffer any prejudice by the filing of the amended complaint[,]" Plaintiff does not explain why Defendant would not be prejudiced. In fact, the Court finds that Defendant has been prejudiced by: (1) having to prepare what is, in essence, a meaningless Motion for Summary Judgment and a reply brief related to that motion, thereby incurring unnecessary time and attorney fees and costs, (2) filing a response to the

7

Motion for Leave to File Amended Complaint when it seems that Defendant would have stipulated to the same in November 2008, when it first became clear that Plaintiff's proofs would not conform to the allegations set forth in the Complaint, and (3) the expiration of the discovery period and the passage of the deadline for filing a dispositive motion.

Moreover, as Defendant asserts, even aside from the withdrawn allegations in the Complaint (that there was a "palm-heel" strike), Plaintiff has given numerous versions of what happened the night he injured his wrist. These varying versions make it is clear that Plaintiff does not know how his injury occurred that evening. As Plaintiff stated at his deposition,

> So I don't know, when he shoved me, if he twisted my wrist or when he shoved me, that's when my wrist broke. I don't know.
>
> ...And I told the doctor, I don't know when exactly, my wrist–if he twisted it or when he shoved me and rammed me and then I put my, like, this–my chest right here–my hand right here in front of my chest, I don't remember. It happened so quick.

Plaintiff also offered contradictory testimony about how Defendant was holding Plaintiff's wrist. At one point, Plaintiff stated that Defendant was holding Plaintiff's left wrist (the one that was broken) in front of Plaintiff. Plaintiff later stated that Defendant was holding Plaintiff's left wrist behind Plaintiff's back when Plaintiff turned around to get his license. Plaintiff further stated that Defendant did not let go of Plaintiff's left wrist (Plaintiff said Defendant held it firmly) when Plaintiff turned to pick up his license, as evidenced by the following question and answer at Plaintiff's deposition:

> Q. All right. Is it your understanding then that [Defendant] let go of your wrist when he pushed you toward the couch?
>
> A. No, I don't remember. I don't think he did. I think that's when - - I don't know for sure if that's when it broke or if the impact of the couch broke it. I don't remember. I'm - - I was

8

> confused right from the get because, bam, it happened.

Notwithstanding that testimony, Plaintiff now seeks to amend the Complaint to allege that "Defendant ... violently and forcibly shoved Plaintiff from behind. The force of the shove by Defendant ... was such that Plaintiff ... fell to the ground, landing hard on his left wrist." If, in fact, Defendant was holding Plaintiff's wrist and didn't let go, it would be impossible for Plaintiff's wrist to have been broken from bracing himself when hitting the ground (as he now alleges in his proposed amended Complaint) because Defendant would have still been holding Defendant's wrist.

The bottom line is that Plaintiff does not remember what happened to cause his wrist to break on November 10, 2007. Between the allegations in his Complaint (which changed only after Defendant filed a motion for summary judgment based on qualified immunity), his visit to the doctor two days after the incident and his deposition a year later, Plaintiff himself has offered three different ways in which his wrist was broken. In addition, Plaintiff admits to having four beers and all other witnesses who saw Plaintiff that evening have testified that he was drunk or intoxicated. As Plaintiff cannot testify as to exactly what happened in this incident, it is impossible to define Plaintiff's constitutional right allegedly violated by Defendant. Accordingly, the Court concludes that the amendment to the Complaint proposed by Plaintiff would be futile. Plaintiff's Motion for Leave to File First Amended Complaint is therefore denied. *See Yuhasz, supra*.

## V. CONCLUSION

Accordingly, and for the reasons above, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Leave to File First Amended Complaint is DENIED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: June 11, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 11, 2009.

s/Marie E. Verlinde
Case Manager
(810) 984-3290